26-5665

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SEP 15 2026

FILED
DOCKETED
DATE INITIAL

ANTHONY STIGER
Plaintiff-Appellee

V.

JIMENEZ et al.
Defendants-Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
D.C. No. 3:23-CV-00653-MMD-CSD

MOTION TO DISMISS FOR LACK OF JURISDICTION
OR IN THE ALTERNATIVE FOR SUMMARY AFFIRMANCE
BY PLAINTIFF-APPELLEE
ANTHONY STIGER

Respectfully Submitted by:
Anthony Stiger
DOC# 1115355
Lovelock Correctional Center
1200 prison Rd.
Lovelock, Nevada 89419

SCANNED

# MOTION TO DISMISS FOR LACK OF JURISDICTION OR IN THE ALTERNATIVE FOR SUMMARY AFFIRMANCE.

Plaintiff - Appelle, Anthony Stiger pro se hereby moves pursuant to Fed. R. App. P. 27(a) and Ninth Circuit Rules 27-11(a)(1) and Fed. R. App. P. 42-1, to dismiss the appeal of Defendant(s) - Appellants Robert Jimenez, Bradley Bergren, and Yasser Mohamed, or in the alternative for summary affirmance pursuant to Ninth Circuit Rule 3-6.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This appeal (Defendants Interlocutory appeal) should be dismissed by the Ninth circuit court of Appeals, due to lack of Jurisdiction. The District courts denial of Defendants summary Judgment was due to genuine disputes of material facts that remained, regarding whether defendants violated Stiger's clearly

established Eighth Amendment rights. Moreover, defendants have continued to adamantly argue against, dispute, and refuse to accept plaintiff's version of events. Despite the fact that these events have been proven, as well established on the record with the district court, defendants continue to unequivocally hold firm to their own disproven version of facts and events, in their attempt to assert their entitlement to qualified immunity. There is simply no right to an interlocutory appeal of an order denying qualified immunity, unless the defendant accepts all of plaintiff's facts as true. See... Adams v. Speers, 473 F.3d 989, 990-91 (9th Cir. 2007) (The defendant "can make an interlocutory appeal from the ruling on immunity only if he accepts as undisputed the facts presented by the appellees".)

The defendants plainly did not do so in their motion for summary judgment, given the fact that their motion was premised on disregarding evidence favorable to the plaintiff, and viewing the record in a light

that was most favorable to their version of events. As previously Stated, the district court denied defendants motion for summary on the grounds that (Multiple) disputed material facts existed. During the course of Summary judgment, defendants failed to present the issue of qualified immunity as a realistic question of law. The Ninth circuit "has jurisdiction over 'legal' but not 'factual' interlocutory appeals." A.K.H. by & through Landeros v. City of tustin, 837 F.3d 1005, 1010 (9th Cir. 2016)

Defendants have not, and cannot establish any legal basis for their appeal for qualified immunity within the Ninth Circuit court of appeals.

The court lacks Jurisdiction over this appeal, and accordingly should dismiss defendants appeal, or in the alternative, summarily affirm the district court's judgment denying the defendants claim of qualified immunity.

## II. ANALYSIS

### A. DEFENDANTS APPEAL SHOULD BE DISMISSED

Ninth Circuit Rule 3-6(a) provides that at "any time prior to the

completion of briefing in a civil appeal..., if the court determines... that it is manifest that the questions on which the decision in the appeal ... depends are so insubstantial as not to justify further proceedings... the court may, upon motion of a party... issue an appropriate dispositive order."

Dismissal in this case is required because the Supreme Court has ruled multiple times on what the guidelines and qualifications are, for a proper interlocutory appeal of qualified immunity. For example, in the case of Johnson v. Jones, 515 U.S. 304, 311, 132 L.Ed 2d 238, 115 S.CT. 2151 (1995) Id at 317 - Johnson reaffirmed that Summary judgment determinations are appealable when they resolve a dispute concerning a "Abstract issue of law" relating to qualified immunity. Typically, the issue whether the federal right allegedly infringed was "clearly established" see, e.g.,[1] Mitchell, Supra, 472 U.S. at 530-535; Davis v. Scherer, 468 U.S. 183, 190-193, 82 L.Ed. 2d 139, 104 S.Ct. 3012 (1984)

Defendants have yet to raise any questions that pertain to abstract issues of law, or the existence of properly applied constitutional rights that deal with the plaintiff, outside of their version of events. Defendants have Continuously REFUSED to accept plaintiff's version of events, even after the

[1] Mitchell v. Forsyth, 472 U.S. 511, 533, 86 L. Ed. 2d 411, 105 S.CT. 2806 (1985)

Magistrate judges report and recommendation (EXHIBIT A) and as well as the District Judges ruling (EXHIBIT B).

Under 28 U.S.C. § 1291 "appellate courts generally lack jurisdiction to hear interlocutory appeals from the denial of Summary judgment. However, an exception applies to appeals from the denial of qualified immunity". See Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 944 (9th cir. 2017) The appellate court has jurisdiction over an interlocutory appeal from a denial of Summary judgment to "review a denial of qualified immunity where a defendant argues... that the facts, even when considered in the light most favorable to the plaintiff, show No violation of a constitutional right, or no violation of a right that is clearly established in law." Isayeva, 872 F.3d at 945.

B. DEFENDANTS SUMMARY JUDGMENT WAS DENIED, DUE TO A GENUINE DISPUTE OF MATERIAL FACT

Both the magistrate judge [Judge Craig S. Denney] as well as the District judge [Judge Miranda M. Du] ruled in their separate rullings that they found "Genuine disputes of material fact" see (Both)... (EXHIBIT A page 17 lines 3-5) and (EXHIBIT B page 11 lines 9-22.) (EXHIBIT A page 23 lines 8-13) (EXHIBIT B page 6 lines 16-25) As to both plaintiffs failure to protect claim, as well as his eigth Amendment claim for excessive force. The district court denied the defendants Summary judgment, due to a "Genuine dispute of material facts". Facts that

were disputed, not by words or claims alone that were spoken by the plaintiff, but facts that were presented and established on the record by Physical Evidence produced by the plaintiff. Evidence such as... Plaintiff's Grievances, both Emergency grievances as well as his informal grievances, also... Sworn declarations from other inmates that confirm plaintiff's version of events regarding both eighth amendment claims. (failure to protect and excessive force) see... (EXHIBIT A page 24 lines 22-23) and (EXHIBIT B page 6 lines 16-20) as well as (EXHIBIT A page 25 lines 1-19)

The Ninth Circuit court does not have Jurisdiction over defendants interlocutory appeal, due to "the parties evidence presenting genuine issues of material fact." There is a precedent that has been set, and defendants, as well as plaintiff must adhere to the rules and guidelines set forth by not only the Ninth circuit Court, but also the U.S Supreme Court Rules and guidelines that unequivocally State that this appeal must be dismissed due to lack of Jurisdiction.

This case is full of disputed material facts, not questions of law or any

inquiry into the application or existence of constitutional rights. This case is simply nothing more than a classic case of two completely different versions of events, and the evidence (or lack there of) that can support each claim. This case deserves to be argued in front of a jury, and not to be used as a stall tatic to waste the precious time of the 9th circuit appeals court.

"We have jurisdiction to determine our jurisdiction." United States v. Decinces, 808 F.3d 785, 788 (9th cir. 2015) Although an order denying summary judgment is not generally immediately appealable as a final decision within the meaning of 28 U.S.C § 1291, "The Supreme Court has created an exception to the final judgment rule for certain interlocutory appeals when the district court has denied a motion for summary judgment based on qualified immunity." Pauluk v. Savage, 836 F.3d 1117, 1120-21 (9th cir. 2016) However, this exception DOES NOT extend to a district courts determination that "THE PARTIES EVIDENCE PRESENTS GENUINE ISSUES OF MATERIAL FACT" and thus, such determinations remain "categorically unreviewable on interlocutory appeal" George v. Morris, 736 F.3d 829, 834 (9th cir. 2013) see also... Johnson v. Jones, 515 U.S. 304, 319, 115 S.CT. 2151, 132 L. Ed. 2d 238 (1995) (describing a district court's decision that an issue of fact is "genuine" as an "unreviewable determination.")

"Where there are disputed issues of material fact, our review is limited to whether the defendant would be entitled to qualified immunity as a matter of law, assuming ALL FACTUAL DISPUTES are resolved, and all reasonable inferences are drawn, in plaintiff's favor." Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th cir. 2012)

"As a threshold matter, the court of Appeals has jurisdiction under 28 U.S.C. § 1291 to review the denial of summary judgment on qualified immunity grounds notwithstanding the absence of a final judgment." Plumhoff v. Rickard, 134 S. Ct. 2012, 2018-20, 188 L. Ed. 2d 1056 (2014) (citing Johnson v. Jones, 515 U.S. 304, 309, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995)); see also Mattos v. Agarano, 661 F.3d 433, 439 (9th Cir. 2011)

However, a district court's decision to deny summary judgment for qualified immunity on the basis that there is a "Genuine issue of material fact" cannot be appealed. See... Cunningham v. City of Wenatchee, 345 F.3d 802, 806-07 (9th Cir. 2003) ("Interlocutory appeals are NOT available when the appellate court is required to resolve a 'fact-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine 'issue of fact for trial." (quoting Johnson v. Jones, 515 U.S. 304, 307, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995.))

It also should be noted for the record that "The officials MUST present the appellate court with a legal issue that does **not** require the Court to 'consider the correctness of the plaintiffs version of the facts. . ." (quoting Johnson, 515 U.S. at 312.))

The facts in this case are far from resolved, as evident in the record where defendants refuse to accept plaintiffs' version of events (Exhibit A page 24 lines 11-15) and (Exhibit B page 6 lines 16-25)

Defendant's claim of qualified immunity soley rest upon the court's reliance on their version of facts. Whereas plaintiff contends (with authenticated evidence) that their version of events completely contradicts plaintiffs version.

1.) Defendants argue they are entitled to qualified immunity due to the defendants responding to plaintiffs call for help with only a "three hour delay in responding" due to it being "Christmas eve" (Exhibit A page 8 lines 6-15)

2.) This is one of Many examples of the defendants NOT accepting plaintiff's Version of events. As noted in plaintiff's Grievance as well as plaintiffs claim, and as the District Judge pointed out... PLAINTIFF'S claim is now, and has Always Been that..." The Defendant's NEVER RESPONDED AT All, TO PLAINTIFF'S PLEA FOR HELP." (EXHIBIT B page 6 lines 21-25.)

Contrary to defendants "Varying and inconsistent accounts of the Institutions Response"

ranging from "less than an hour" to "an hour" to "three hours" (Exhibit B page 11 lines 2-8)

Plaintiff has proven Multiple times over, that the defendants NEVER responded to plaintiff. Nor did they aid plaintiff during his emergency situation. As plaintiff has noted several times, the respondents were alerted by the plaintiff as well as other various inmates due to the commotion and uproar that was heard from the outside of the unit. Once NON-Party officers showed up, they were the ones who removed plaintiffs cell mate and aided plaintiff, not the defendants who were all "put on notice" (Exhibit B page 10 lines 16-28)

Plaintiff is asking the appeals court to please read the exhibits attached to this Motion and Dismiss the defendants appeal for lack of Jurisdiction, or in the alternative, affirm the Summary judgment ruling under the pre-established precedent that has been previously set and decided on by the United States Supreme Court as well as the Ninth circuit court of appeals.

Defendants do not accept plaintiff's version of events, as well as the

existence of various material factual disputes that preclude and prevent the court of appeals from ruling on defendants interlocutory appeal for qualified immunity.

C. DISPUTED MATERIAL FACTS EXIST, AS WELL AS DEFENDANTS NOT ACCEPTING PLAINTIFFS VERSION OF EVENTS FOR HIS EXCESSIVE FORCE CLAIM AGAINST DEFENDANT JUMINEZ.

As previously noted throughout this ENTIRE MOTION Defendants have not one time accepted plaintiff's version of facts in the eighth amendment claim of excessive force inspite of multiple declarations by eye witnesses. (Exhibit A page 25 lines 1-22 )

Defendants Simply Contend that there was "No force" used at all against plaintiff. (Exhibit A page 24 lines 11-15) Moreover, defendants also dispute plaintiffs informal grievance on the excessive force claim, and Contend that plaintiff never filed a grievance. (Exhibit A page 20 lines 9-10 ) and (Exhibit B page 8 lines 5-13 )

To which plaintiff then produced the aforementioned grievance and then the

defendants argued against it's authenticity As a result of that disputed fact (EXHIBIT A page 20 lines 11-13) the district court Judge ordered an evidentary hearing on the exhaustion of plaintiffs administrative remedies. (again, another disputed fact that precludes the court of appeals Jurisdiction in the matter of this case.) (EXHIBIT A page 22 lines 7-14.) (the hearing was re-scheduled due to this Appeal)

D. DEFENDANTS INTERLOCUTORY APPEAL FOR QUALIFIED IMMUNITY IS FRIVOLOUS AT BEST

An appeal is frivolous "when the result is obvious or the appellant's arguments are wholly without merit" Blixseth, 796 F.3d at 1007) (Blixseth v. Yellowstone Mountain Club, LLC, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting Glanzman v. Uniroyal, INC., 892 F.2d 58, 61 (9th cir. 1989))

The fact that defendants appeal is based upon their version of facts prevents this court from having proper jurisdiction to review their appeal.

See... Nicholson v. City of los Angeles, 935 F.3d 685, 693 (9th Cir. 2019) "Because this is an interlocutory appeal, we are not free to revisit the district courts conclusions as to 'which fact a party may, or may not be able to prove at trial.' (quoting George v. Morris, 736 F.3d 829, 834 (9th cir 2013))

The results of defendants appeal of qualified immunity is obvious.

E. IF PLAINTIFF'S VERSION OF EVENTS IS CREDITED, IT RENDERS DEFENDANT'S APPEAL BASELESS.

IF the facts are construed in the light most favorable to the plaintiff, then it would unequivocally confirm beyond dispute that defendants violated constitutional rights that were **clearly** Established at the time of the incident with plaintiff's cell mate in 2022.

1.) Plaintiff's failure to protect claim (Exhibit A page 2 lines 6-16.)

2.) Plaintiffs Excessive force claim (Exhibit B page 3 lines 3-12 )

Again, as previously stated before... plaintiff's version of events CLEARLY shows a violation of previously established constitutional rights, by the defendants acting with deliberate indifference towards the plaintiff.

The reason(s) why defendants appeal is baseless when it comes down to the plaintiff's rights being violated, is because once defendants concede on the record (for purpose of this appeal) that plaintiff's version of events is "true and correct" for all intents

and purposes They would have to therefore acquiesce to the fact that on December 24th 2022 while housed at HDSP the plaintiff Appellee - Anthony Stiger, informed Defendants - Appellants Bradley Bergren, Robert Jimenez, and Yasser Mohamed that his cell mate was behaving erratically and violently, threatening to and did stab plaintiff with a "prison made knife" (which defendants first hand witnessed in the hands of plaintiffs violent cellmate.) All while plaintiff continued to plead, and beg for help from the defendants to no Avail. As each defendant simply chose to walk away and ignore plaintiff as he fought for his life for three straight hours against a knife wielding psychotic cellmate. (Exhibit A page 11 lines 1-20) Then, (as plaintiffs version of events is continued as established by the record here (Exhibit B page 6 lines 21-25))

It wasn't until the uproar reached the ears of Non-Party officers. Who were Stationed Well outside of plaintiff's unit. Overheard the yelling, Screaming, and Pleading for help by the plaintiff (and other inmates on the tier) Rushed in

and saved plaintiffs' life. Defendants (Appellants) were in the unit the entire time with plaintiff and made the callous choice to walk away from plaintiff's door with the utmost disregard for plaintiffs life and safety.

Then... (as plaintiffs version of events is continued, and once again is established by the record (Exhibit B page 3 lines 3-12)) to add further insult and physical injury to plaintiffs already pre-existing injuries. (which were sustained during plaintiffs attack by his cellmate) Plaintiff was attacked once again, this time by defendant Appellant Jimenez. As he was escorting plaintiff Appellee - Stiger who was handcuffed back to his cell after a strip search. Plaintiff was attacked for absolutely No reason at all by defendant. (Appellant Jimenez)

The aforementioned events are A Clear violation of plaintiffs established Constitutional rights. Rights that have been established Well BEFORE this incident ever occured. In accepting plaintiffs version of events, as supported by the record, that was established during Summary Judgment it is easy to Conclude:

that defendants knowingly, willfully, and with blatant disregard for plaintiff's safety. Violated plaintiff's eighth amendment Constitutional rights.

"None of the defendants can claim ignorance to a prisoner's right to be protected from violence at the hands of other inmates." Wilk v. Neven, 956 F.3d 1143, 1150 (9th Cir. 2020)

"Under the eighth amendment, prison officials have a duty to take reasonable steps to guarantee an inmate's safety and protect him from assault by other inmates". Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A prison official violates this duty when: (1) a prison inmate is incarcerated under conditions that objectively pose a substantial risk of serious harm from another inmate; and (2) the official responds with deliberate indifference - i.e., subjectively knows of the risk and deliberately "disregards that risk by failing to take reasonable measures to abate it." Id. at 837, 847.

In addition to that established Eighth Amendment right...

It has long been "clearly established law that beating a handcuffed convict violates the Eighth Amendment". Huges v. Rodriguez, 31 F.4th 1211, 1223 (9th Cir. 2022) (citing Hudson, 503 U.S. at 4.)

The Supreme Court's "Settled rule is that 'the unnecessary and wanton infliction of pain... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 5 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)

Furthermore... "A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm." Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523, (1987); Lacey v. Maricopa Cnty., 693 F. 3d. 896, 915 (9th Cir. 2012)

F. PREVIOUSLY DISMISSED APPEALS BY THE NINTH CIRCUIT COURT DUE TO LACK OF JURISDICTION.

The ninth circuit court of appeals has dismissed a countless number of appeals for "lack of Jurisdiction" due to the fact that the Appellants have not raised an issue of law, and due to the fact that they (Appellants) have not accepted the Appelle's version of facts and events. Also, due to Summary judgment and qualified immunity being denied due to "genuine disputes of material fact."

Xuyen Le v. Molina, 810 Fed. Appx. 550 - Dismissed due to Appellants not accepting Appelle's version of facts

Conatser v. N. Las Vegas Police Dep't (in re Conatser), 445 Fed. Appx. 932 - Dismissed due to Material facts found in Summary Judgment ruling, (denying Qualified Immunity) (due to genuine dispute of material facts)

Maddox v. City of Sandpoint, 733 Fed. Appx. 609 - Dismissed due to Applicants failure to present facts in the light most favorable to Appellee.

Espinosa v. Gittere, 2026 U.S. App. LEXIS 18487 - Dismissed due to Appellants raising "fact based challenges"

Pauluk v. Savage, 836 F.3d 1117 - Dismissed due to the district court denying Summary Judgment on purely factual grounds

Tabarez v. Butler, 340 Fed. Appx. 369 - Dismissed due to Genuine dispute of facts. (Facts that were not agreed upon, and argued during Summary Judgment.)

## III. CONCLUSION

In United States v. Hooton, 693 F.2d 857, 858 (9th Cir. 1982), this Court held that motions to summarily affirm should be granted when the appeal is "obviously controlled by precedent" or "the insubstantiality is manifest from the face of appellant's brief."

Defendants appeal should be dismissed due to the fact that defendants never have, nor will they ever accept plaintiffs version of events, because in doing so, it would mean that defendants will have then conceded to violating plaintiffs previously established rights. In addition to that, this court lacks appellate jurisdiction due to the fact that the defendants

Summary judgment and qualified immunity defense was denied due to disputes of Material fact, and NOT due to questions or matters of law. Defendants have not raised any issues of **law**, and if permitted to do so (by not dismissing this appeal) defendants will just continue to waste this courts time and judicial resources by arguing the Same previously disputed facts with the plaintiff (Apellee) in their brief. For the foregoing reasons, this court should grant the Plaintiffs (Apellee's) Motion to Dismiss FOR LACK OF JURISDICTION OR IN THE ALTERNATIVE SUMMARILY AFFIRM the district courts Judgment. (DENYING Defendants qualified immunity) Defendants Appellants (Robert Jimenez, Bradley Bergren, and Yasser Mohamed) should not be allowed to use this appeal as a Stall tactic to delay the proceedings of the Court Unnecessarily. The facts of this case deserved to be tried and weighed by a jury.

Respectfull Submitted, on Sept 10th 2026 [signature]

CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing MOTION TO DISMISS FOR LACK OF (APPELATE) JURISDICTION OR IN THE ALTERNATIVE FOR SUMMARY AFFIRMANCE. with the clerk of the court for the UNITED STATES COURT OF APPEALS for the Ninth Circuit by using the United States Postal Service and depositing a copy of this Motion in the mail on September 10th 2026. For Mailing.

I also further certify that I have sent participants in this matter a copy of the Above Mentioned motion, as well as any and all Exhibits by placing a copy of this motion in the mail on September 10th 2026. to the following address... (Defendants (Appellants)) were sent/served a copy to:

John Regalia
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(Attorney for Defendants (Appellants))

- Bradley Bergren
- Robert Jimenez
- Yasser Mohamed

Respectfully submitted,

[signature]

(Anthony Stiger)
#1115355

# Exhibit A

Magistrate Judge's Report and Recommendation

Exhibit A

Exhibit A

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTHONY STIGER,<br>Plaintiff<br>v.<br>JUMINEZ, et al.,<br>Defendants | Case No.: 3:23-cv-00653-MMD-CSD<br>**Report & Recommendation of United States Magistrate Judge**<br>Re: ECF Nos. 44, 50 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff filed a motion for summary judgment. (ECF No. 44.) Defendants filed a response to Plaintiff's motion. (ECF Nos. 45, 45-1, 45-2, 47-1.) Plaintiff filed a reply. (ECF No. 49.)

Defendants filed their own motion for summary judgment (ECF No. 50), to which Plaintiff filed a response (ECF Nos. 52, 52-1, 52-2). Defendants filed a reply. (ECF Nos. 52, 53-1, 55-1.) Plaintiff was granted leave to file supplemental briefing (*see* ECF Nos. 57, 58), and Defendants were granted leave to file a supplemental response (ECF Nos. 65, 67).

After a thorough review, it is recommended that Plaintiff's motion and Defendants' motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP).

The court screened Plaintiff's first amended complaint and allowed him to proceed with two Eighth Amendment claims: (1) a failure to protect claim against defendants Yasser Mohamed (mistakenly named by Plaintiff as Muhammad), Robert Jiminez (mistakenly named by Plaintiff as Juminez), and Bradley Bergren (mistakenly named by Plaintiff as Burgen)[1]; and (2) an excessive force claim against Jiminez. (ECF Nos. 4, 7.)

Plaintiff alleges that he was housed with inmate Garner at HDSP, and HDSP staff know Garner has a long history of violent psychotic episodes that have resulted in him harming himself as well as other inmates. Plaintiff claims that on December 24, 2022, he alerted Bergren, and later Mohamed and Jiminez, that his cellmate was acting erratically, threatening to harm himself and Plaintiff, had a prison-made knife and had injured Plaintiff, to no avail. When other officers finally came to remove Plaintiff's cellmate after several hours, Plaintiff claims that Jiminez was escorting him back to his cell, and while in handcuffs, punched Plaintiff in the back and shoved him into the cell wall, causing Plaintiff to buckle in pain. Then, Jiminez stood Plaintiff up and pushed his head into the wall, splitting open Plaintiff's lip and causing two loose teeth. Plaintiff claims that as a result of these events, he sustained nerve damage, is in chronic pain, requires a cane to walk and has been diagnosed with severe anxiety and depression.

Plaintiff moves for summary judgment, arguing that Defendants were deliberately indifferent to a risk to his safety because he reported his cellmate's psychotic and violent behavior to each of them on December 24, 2022, but they failed to do anything. He further argues that Jiminez used excessive force when he punched Plaintiff in the back while handcuffed, and then pushed his head into the wall, causing further injury. He claims that he suffered injuries as a result of both incidents, and is entitled to punitive damages.

---

[1] Defendant Eric McGowan was voluntarily dismissed by Plaintiff. (*See* ECF No. 29.)

Defendants oppose Plaintiff's motion and move for summary judgment, arguing: Plaintiff has no admissible evidence that Defendants were deliberately indifferent to his rights under the Eighth Amendment; they are entitled to qualified immunity; Plaintiff failed to exhaust his administrative remedies with respect to his excessive force claim; and punitive damages are not appropriate.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'... In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegàtions of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Eighth Amendment Failure to Protect

#### 1. Standard

Although prison conditions may be, and often are, restrictive and harsh, prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol,* 776 F.3d 1046, 1050 (9th Cir.2015). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see*

*also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

First, the deprivation must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834 (citations and quotations omitted). When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dept. of Corr. and Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013) (citation omitted).

Second, the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

"A prison official's deliberate indifference may be established through an 'inference from circumstantial evidence' or "from the very fact that the risk was obvious.'" *Cortez*, 776 F.3d at 1050 (citing *Farmer*, 511 U.S. at 842); *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 841-42).

Thus, prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

**2. There are Disputed Material Facts Regarding Whether Bergren, Mohamed and Jiminez Were Deliberately Indifferent to a Serious Risk to Plaintiff's Safety**

Plaintiff argues that he notified Bergren, Mohamed and Jiminez of his cellmate's dangerous state, but they ignored his complaints, and Plaintiff suffered injuries in fending off his cellmate during his mental breakdown on December 24, 2022.

Defendants, on the other hand, argue that Plaintiff has no admissible evidence that Defendants were reasonably aware of the risk of harm to Plaintiff or that he suffered a serious injury as a result of the alleged failure to protect. They contend that the institution responded and took his cellmate to the infirmary within an hour of his submitting emergency grievances.

According to Plaintiff, on December 24, 2022, his cellmate was having a mental breakdown and engaging in erratic behavior, including trying to fight and stab other inmates on the tier. (ECF No. 4 at 4.) Plaintiff told Bergren that his cellmate needed mental health assistance and he was acting crazy, waving around a knife, trying to hurt people and saying that he wanted to kill himself. Bergren responded, "Ok, well it's almost count, you and your cellie go lock down, and I'll deal with it." No one responded. (ECF No. 4 at 4-5; ECF No. 44 at 35.)

Plaintiff submits a declaration from inmate David Burnes stating that he overheard Plaintiff ask Bergren to call mental health services for his cellmate, and Bergren said he would call but they needed to lock down. (*Id.* at 33.) According to Burnes, 30 minutes later, Plaintiff asked him (Burnes) to ask Bergren if he called mental health, and when Burnes asked Bergren he responded, "I'm not calling. I honestly don't give a shit." (*Id.*)

Defendants argue that "there is no record outside of [Plaintiff's] own testimony and the testimony of another offender to establish" the timeline that Plaintiff informed Defendants of the need to call medical at 11:00 a.m. (ECF No. 45 at 13:11-13.) Defendants are suggesting that the

court should just ignore the Plaintiff's own testimony, and that of inmate Burnes, without providing any authority for this absurd proposition. The court may consider Plaintiff's own testimony, as well as the statement in the declaration made under penalty of perjury by another inmate, as well as the fact that Plaintiff repeated this version of events in his informal level grievance.

Defendants then argue that even accepting this version of events (that Plaintiff notified Bergren at 11:00 a.m. of his cellmates behavior), there was "only a three-hour delay in responding to [Plaintiff's] request for his cellmate to see medical," which , "on Christmas Eve is not indicative of deliberate indifference[.]" (ECF No. 45 at 13:13-16.) Again, Defendants cite no authority to support their argument that a three-hour delay in responding to an inmate's complaints of being housed with a cellmate who was having a psychotic episode and displaying violent behavior could not rise to the level of deliberate indifference. Nor do they provide authority to support the proposition that such a delay is reasonable because it occurred on a holiday, suggesting that prison officials are free to ignore reports of threats of harm to inmates on holidays, at least for a several hours.

Plaintiff goes on to assert that his cellmate then told Mohamed he was going to kill himself, and placed a knife to his neck, and requested help. He claims that his cellmate told Mohamed that if he walked away from the door, he would stab himself as well as Plaintiff. (ECF No. 4 at 5-6.) Plaintiff pleaded with Mohamed to radio for help and not leave. Mohamed told Plaintiff's cellmate he needed to "stop his bullshit," and unless he wanted another write up, he needed to get rid of the knife. (*Id.* at 6.) Mohamed told Plaintiff he did not have time for Plaintiff's cellmate's "shit" that day, and he had to proceed with count. Plaintiff pleaded with Mohamed to help because he feared for his life. (*Id.*) Mohamed told Plaintiff that his cellmate

did this all the time and he was not going to deal with it that day. (*Id.*) Mohamed then walked away from the door.

Plaintiff's claims that his cellmate became enraged and began swinging his knife at Plaintiff, and stabbed him in the left forearm and left knee, and Plaintiff continued to struggle with his cellmate, sustaining injuries to his back, neck and legs. (*Id.*)

Jiminez then approached the cell and asked why Plaintiff was yelling. (*Id.*) Plaintiff told Jiminez he had been attacked by his cellmate and needed medical assistance and his cellmate needed mental health assistance. Plaintiff asked to be separated from his cellmate. (*Id.* at 7.) Jiminez responded that Plaintiff's cellmate looked like he was high and needed to sleep it off. Plaintiff told Jiminez he felt like he was in danger, that he had already been stabbed, he needed medical attention and to be separated from his cellmate. (*Id.*) Jiminez told him there was no one there to help, and Plaintiff needed to "deal with him." (*Id.*)

Plaintiff's cellmate again became enraged and slammed Plaintiff against the desk, causing further injury to Plaintiff's back. Plaintiff's cellmate told Jiminez that he was trying to kill himself and that if they did not call for help he would take Plaintiff with him. (*Id.*) Jiminez laughed and said, "damn, that old man is strong" and told Plaintiff's cellmate to relax and sleep it off. (*Id.*) Jiminez then stood by as Plaintiff's cellmate stabbed himself in the neck with the knife until it bent, and then flushed it down the toilet. At that point, Jiminez said, "ok, problem solved," and walked away. (*Id.*)

Plaintiff claims that his cellmate then grabbed the clothesline and began trying to strangle Plaintiff until Plaintiff was able to climb to the top bunk. Plaintiff's cellmate then wrapped the clothesline around his own neck and pulled it until he passed out. (*Id.* at 7-8.)

Plaintiff started yelling and kicking the door and asked other inmates to help get an officer's attention. Eventually, two hours after the ordeal began, additional offices arrived and removed Plaintiff's cellmate and took him to medical. (*Id.* at 8.)

At 1:04 p.m., Plaintiff submitted an emergency grievance stating that he and his cellmate had notified multiple officers that his cellmate needed help, and his cellmate was stabbing himself, but the officers were refusing to put him in the shower and kept him in the cell in that state of mind. (*Id.* at 40.)

One minute later, at 1:05 p.m., Plaintiff filed a second emergency grievance, stating that he notified Bergren, the bubble officer, and floor officers (identified by Plaintiff as Mohamed and Jiminez) that his cellmate was having a psychotic episode and was a danger to himself and others, but they failed to respond. He specifically stated that his cellmate was stabbing himself and was trying to harm others, including officers and inmates, and in particular, was trying to harm Plaintiff. He indicated that he had been screaming and yelling, but was ignored. He asserted that he begged the floor officer to put him (Plaintiff) in the shower, but he walked away and told Plaintiff it was almost count time and for his cellmate to calm down. (ECF No. 44 at 38-39.)

Both emergency grievance responses indicate that Plaintiff's cellmate was eventually brought to the infirmary. (ECF No. 44 at 38, 40.)

At 2:55 p.m., Plaintiff submitted an informal level grievance (number 20063147031), which reiterates that he told both floor officers (i.e., Mohamed and Jiminez) about his cellmate, to no avail. (ECF No. 44 at 35.) The bubble officer said there was nothing he could do because it was a holiday and no one was there, and hearing this, Plaintiff's cellmate started yelling and waving a knife around. Plaintiff yelled for Mohamed and Jiminez to help, and Mohamed

responded, "It's count time, we can't do anything." Plaintiff's cellmate asked for mental health help, and threatened to stab himself if the officer left. Jiminez looked at Plaintiff's cellmate and walked away. Plaintiff's cellmate then started stabbing himself in the throat until the weapon bent, and then flushed the knife down the toilet after trying, unsuccessfully, to stab Plaintiff. The grievance goes on to state that Plaintiff's cellmate then took down his clothesline and tied it around his neck until he hit his head and passed out. Plaintiff continued to scream for help, until the whole tier joined in.[2] Eventually, at 2:00 p.m., non-defendant officers arrived and took Plaintiff's cellmate to medical. (*Id.* at 35-36.)

Plaintiff's informal level grievance asserted that he was told he would be seen by medical due to the injuries suffered to his face, ribs and backs from keeping his inmate from stabbing him, but he had not yet been seen. He also requested to see mental health due to the trauma he endured that day. (*Id.* at 37.)

Plaintiff's informal grievance was partially granted insofar as it was forwarded to the Inspector General for investigation. (ECF No. 44 at 45.)

Defendants argue the fact that Plaintiff's cellmate was ultimately removed from the cell undercuts Plaintiff's claim that Defendants left Plaintiff to face an unchecked, ongoing attack. (ECF No. 45 at 14:1-2.) This ignores that Plaintiff claims he was left locked in his cell for roughly three hours with an inmate who was waving a knife around and attempting to stab (or did stab) Plaintiff, and then tied a clothesline around his own neck, and tried to wrap it around Plaintiff's neck, during which time Plaintiff was forced to defend himself against the cellmate.

---

[2] Inmate Burnes corroborates that the whole tier was yelling for Jiminez to call medical and the sergeant. (ECF No. 44 at 33-34.)

The court acknowledges there are details contained within Plaintiff's complaint and his briefing on these dispositive motions that do not appear in or are inconsistent with his grievances, but it is for the trier of fact, and not the court on summary judgment, to assess credibility and determine which version of events to believe.[3]

Defendants claim that Plaintiff did not suffer any injury as a result of the alleged incident, but there is also a material dispute as to this issue. Defendants correctly point out that there are no medical records documenting any complaints or treatment for lacerations or stab wounds. Plaintiff's informal level grievance, filed shortly after Plaintiff's cellmate was taken out of their cell, however, claims that he suffered injuries to his face, ribs, and back when he was trying to keep his cellmate from stabbing him, and that he conveyed this to the responding officers and they represented he would see medical, but this did not occur. (ECF No. 44 at 37.) His informal grievance also asked for mental health services to deal with this trauma. (*Id.*)

Plaintiff submitted several kites referencing the December 24, 2022 incident, and continued to complain of and be seen for his back pain.

He was seen for lumbar back pain on May 2, 2023, and an x-ray of the lumbar spine was ordered, which showed mild scoliosis. (ECF No. 47-1 at 67, 171.)

He sent a kite on May 20, 2023, regarding his back where he attributed the injury to the December 2022 incident. He complained of constant pain in his back and neck, and an inability to walk for a prolonged period of time. (ECF No. 44 at 48.) He sent another kite six days later,

---

[3] His complaint and motion claim that his cellmate slammed him against the desk and that he tried to strangle Plaintiff with the clothesline before wrapping it around his own neck, but this detail is not in his grievance. He also states that he told Jiminez that he had already been stabbed, while his grievance states that the cellmate's attempts to stab Plaintiff were unsuccessful. Plaintiff did report in a kite on October 7, 2024, however, that his cellmate stabbed him in the knee on December 24, 2022. (ECF No. 47-1 at 78.) Again, it is for the fact finder to assess credibility and determine which version of events to believe.

on May 26, 2023, stating that he was having trouble walking due to his knee and a leg injury suffered during an incident with his old cellmate. He indicated that his legs would buckle while walking, and it was hard to maintain balance. (*Id.* at 49.) He sent another kite on June 6, 2023, stating that his back had been injured since December 2022, and he was in serious pain and could not walk without assistance. (*Id.* at 50.) He sent additional kites about his back pain on June 7, 2023 (*id.* at 51), July 29, 2023 (*id.* at 52). Dr. Avram ordered an MRI of the L-S spine due to positive severe sharp/shooting pain that had increased over two months and radiated down the right leg to behind the knee. There is a note that the x-ray was positive for scoliosis. The MRI was scheduled for October 16, 2023. (*Id.* at 54.) The provider also ordered flat, barrier free yard and lower bunk and lower floor restrictions, and prescribed Tylenol and Flexeril, as well as a cane for ambulation. (*Id.* at 55-56, 58; ECF No. 47-1 at 13.)

In an August 18, 2023 kite, Plaintiff said he had nerve damage in his back due to an incident that occurred at HDSP, and he was using a cane for assistance. (ECF No. 44 at 53.) On September 14, 2023, he asked to be seen for the pain in his back and for another back brace. (*Id.* at 66.)

The MRI showed: mild acquired spinal stenosis, disk desiccation at L5-S1 with a posterior annular tear, and multilevel neural foraminal narrowing with a notation that the exam was significantly degraded by patient motion limiting interpretation. (*Id.* at 62.)

On January 2, 2024, he told his medical provider that his back was injured by being tackled by his old cellmate. The provider noted he was able to ambulate with a steady gate and to go from sitting to standing without difficulty. His request for another back brace was denied at that time, but he was prescribed Tylenol and ibuprofen to be taken as needed. He was referred to the doctor for another Toradol injection and for Icy Hot. (ECF No. 47-1 at 189.)

Plaintiff was also seen by mental health following the incident. On March 29, 2023, the provider's note says that he denied mental health issues and said the medication for anxiety was prescribed because his blood pressure medication caused anxiety as a side effect. (ECF No. 47-1 at 16, 159.) On August 23, 2023, he reported anxiety that he attributed to the incident where his former cellmate tried to kill himself, and attempted to stab Plaintiff. (ECF No. 47-1 at 162.) At a January 5, 2024, mental health appointment, he attributed his issues to both his mother passing away as well as the incident with his former cellmate, which he said resulted in him needing a cane. The mental health provider noted that he appeared to be experiencing trauma related to the incident with his former cellmate. (ECF No. 47-1 at 165.)

On March 5, 2024, there is a notation that In December 2022, Plaintiff's cellmate with suicidal and homicidal ideation attacked Plaintiff and tried to commit suicide. Plaintiff was diagnosed with adjustment disorder anxiety. (ECF No. 47-1 at 157.)

He sent a kite on April 20, 2024, stating that he had been trying to see mental health for four months related to ongoing extreme anxiety related to his former cellmate trying to kill himself. (ECF No. 44 at 47.)

In a September 25, 2024 kite to a caseworker, he also attributed his back issues to the December 2022 incident at HDSP. (*Id.* at 59.) He continued to kite about his back pain. (*Id.* at 68; ECF No. 44-1 at 1.) Plaintiff was given Toradol injections for his pain. (ECF No. 44 at 63-65; ECF No. 47-1 at 7, 9.)

Defendants are correct that there is a large gap of time before Plaintiff filed any request regarding his back pain, but they acknowledge that his informal grievance filed right after the incident did claim that he suffered physical injuries in trying to fend off his cellmate as well as mental health trauma. While Plaintiff may have waited to submit any kites concerning his

injuries, he did submit kites where he claimed the injuries were a result of that incident. His medical records do document that he suffered from back pain and received treatment including pain medications, injections, a back brace at one point, a cane, as well as restrictions to a flat, barrier free yard, and a lower bunk and lower tier cell.

Defendants claim that the imaging shows degenerative as opposed to traumatic changes in the spine; however, Plaintiff is correct that the doctor interpreting the MRI did not describe the imaging in that fashion. Nor do Defendants provide a report from an expert opining as such.

Defendants also argue that there is no connection to the prescription for the cane to the December 24, 2022 incident, but at the same time, there is nothing in the record that provides any reason for the prescription of the cane other than that Plaintiff was suffering from back pain.

It is for the fact finder to determine based on all available evidence whether Plaintiff's pain and injuries are attributable to the December 24, 2022 incident, and to assess Plaintiff's credibility with respect to his alleged injuries.

Plaintiff argues that his failure to protect claim is supported by the fact that none of these Defendants filed an incident report in violation of a prison regulation, but the failure to follow a regulation does not give rise to a constitutional regulation. *See Russell v. Lumitap*, 31 F.4th 729, 742 (9th Cir. 2022) (citation omitted) ("[T]here is no § 1983 liability for simply acting contrary to prison policy[.]"). As discussed above, Plaintiff must establish that the Defendants knew or and disregarded a risk to Plaintiff's safety. Moreover, an incident report was filed with respect to Plaintiff's cellmate being taken out of his cell, and while the regulation requires an incident report regarding the use of force, the absence of an incident report may also be relied on by Jiminez to indicate no force was used.

Defendants argue they are entitled to qualified immunity on the failure to protect claim.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

The court has found that there are genuinely disputed facts that preclude a finding at the summary judgment stage that there was or was not a violation of the Eighth Amendment with respect to the failure to protect claim.

Moreover, taking the facts in the light most favorable to Plaintiff, it has been clearly established for some time that prison officials have a duty to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833. It was also clearly established that the failure to respond to an inmate's call for help can constitute deliberate indifference. *Clem*, 566 F.3d at 1181-82.

Defendants arguer that there is no case that would have put them on notice that their actions would violate the Eighth Amendment, because they appear to have responded to Plaintiff's emergency grievance within an hour and sought medical help for Plaintiff's cellmate. This argument ignores the fact that Plaintiff claims that he complained to Bergren at 11:00 a.m., and then Mohamed and Jiminez some time between then and 1:00 p.m., and in between the time officers eventually arrived around 2:00 p.m. and took Plaintiff's cellmate out of the cell, the cellmate told the floor officers that if he did not get help he would attempt to harm himself as well as Plaintiff, was acting in a very agitated manner, he attempted to stab Plaintiff with a prison-made knife, and tied a clothesline around his own neck.

The court finds Defendants are not entitled to qualified immunity on the failure to protect claim at this juncture.

In conclusion, both Plaintiff's and Defendants' motions for summary judgment should be denied as to the Eighth Amendment failure to protect claim because there are genuine disputes as to various material facts.

**B. Eighth Amendment Excessive forces vs Jiminez**

**1. Exhaustion**

Jiminez argues Plaintiff did not exhaust administrative remedies with respect to his excessive force claim. Plaintiff claims he did file a grievance about the excessive force used by Jiminez, but never got a response.

**a. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)).

If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1168, 1170-71. If there are material disputed facts as to exhaustion, summary judgment should be denied, and the

court, rather than a jury, should decide the disputed factual issues relevant to exhaustion in a preliminary proceeding. *Id.* (citations omitted).[4]

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id.*

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

---

[4] If the exhaustion issue is intertwined with the merits of a claim that falls within the Seventh Amendment, the parties have a right to a jury trial on the exhaustion issue. *See Perttu v. Richards,* 605 U.S. 460, 468 (2025). That is not the case here.

**b. Exhaustion Within NDOC**

NDOC's Administrative Regulation (AR) 740 contains NDOC's grievance process, which an inmate must utilize to exhaust administrative remedies within NDOC. (ECF No. 52-2 48-62.)[5] An inmate must complete three levels for a grievance to be considered complete: informal, first and second levels. (*Id.*)

All grievances are entered into NDOC's Nevada Offender Tracking Information System (NOTIS), whether or not the grievance is accepted. (*Id.* at 49, AR 740.01.1.) Each facility has a lockbox that inmates can access to submit their grievances. (*Id.*, AR 740.01.2.) Grievances are gathered daily, Monday through Friday, excluding holidays, by the Associate Warden (AW) or designated Grievance Coordinator and/or designated staff member. (*Id.*, AR 740.01.3.) The Grievance Coordinator is required to record receipts, transmittals, actions and responses on all grievances into NOTIS within 3 working days of receipt, and must sign, date and enter the approximate time, as noted on the informal, first, and second level grievance form. In addition, the front page of the grievance is to be date stamped on the day it is entered into NOTIS. (*Id.*, AR 740.01.6.) Grievance documents are stored at the facility where the grievance was issued. Upon completion of each level of the grievance process, the form and copies of all relevant attachments, are to be maintained in the inmate's grievance file. (*Id.* at 50, AR 740.02.1, 740.02.5.)

NDOC has 45 days to respond to an informal level and first level grievance. If the response to an informal or first level grievance is overdue, the inmate may proceed to the next level. (*Id.* at 52, 59, 60, AR 740.03.9, AR 740.08.12, AR. 740.09.6.) NDOC has 60 days to

---

[5] Plaintiff provides the version of AR 740 in effect during the relevant time period, while Defendants provide the version that precedes these events (ECF No. 45-2). Therefore, the court will rely on Plaintiff's version of AR 740.

respond to a second level grievance. If the second level grievance response is overdue, the inmate must submit an Offender Request Form (DOC 3012) to the individual responsible for providing the response to the second level grievance, and include a copy of the overdue grievance or provide the grievance number so the person can ascertain which grievance the inmate is referencing. If there is no response to the DOC 3012 request within 60 days, the inmate is considered to have exhausted administrative remedies. (*Id.* at 61-62, AR 740.10.4.)

**c. There are Disputed Facts Regarding Whether Plaintiff Exhausted Administrative Remedies for his Excessive Force Claim**

Jiminez argues there is no evidence Plaintiff ever filed a grievance regarding the alleged use of excessive force on December 24, 2022. (ECF No. 45-1, Plaintiff's grievance history.)

Plaintiff, on the other hand, argues that he initiated a grievance that raised the use of force by Jiminez on January 4, 2023. He maintains that he completed this grievance through the second level, but never received a response at any level.

Plaintiff includes as an exhibit a grievance stating that on December 24, 2022, he was pulled out of his cell, punched in his head and slammed against the wall by Jiminez. The grievance consists of the informal level signed by Plaintiff and dated January 4, 2023; the first level signed by Plaintiff and dated February 24, 2023; and second level signed by Plaintiff and dated April 17, 2023. (ECF No. 52-1 at 5-9.) The grievance does not have an assigned grievance log number, is not stamped by the facility, and is not signed by the grievance coordinator at any level. Plaintiff also includes as an exhibit a request form dated July 18, 2023, addressed to the Deputy Director/Inspector General/Deputy Director Programs, stating he had not received a response to his second level grievance. The request form appears to contain a staff signature and date of July 18, 2023, though the signature is illegible. (ECF No. 52-1 at 10.)

Finally, Plaintiff provides a copy of an inmate request form sent to Warden Legrand on November 20, 2024, asking him to forward an attached kite regarding the response to a grievance to HDSP. There is a response dated November 21, 2024 that states: "We will forward the attached kite as requested." (*Id.* at 11.)[6] It is not clear what "attached kite" that request is referring to, but presumably it is referring to the July 18, 2023 request form.

In their reply in support of their motion for summary judgment, Defendants dispute that Plaintiff ever filed a grievance about the alleged excessive force by Jiminez. Defendants point out that this purported grievance is not file stamped by NDOC; it is absent from Plaintiff's grievance history; and it does not contain the required grievance coordinator signature.

According to Defendants, every grievance has four copies: an original white sheet, a canary copy, a gold copy, and a pink copy. When the inmate submits the grievance, the facility receives the original white copy, the canary copy and the pink copy. The inmate is immediately given the gold copy as a receipt, and is given the pink copy after the grievance is filed. The original white copy is not given back until the grievance has a response. Defendants contend that if the white version lacks the date stamp or signature of the grievance coordinator, it was never submitted to the institution. (Decl. of Julie Williams, ECF No. 53-1.)

In his sur-reply, Plaintiff claims that the grievance he included as an exhibit is a photocopy of the pink copy of his grievance, and he includes as an exhibit the pink copy of the informal, first, and second levels of this grievance. (ECF No. 57 at 10-15.)

Plaintiff also argues that he made Defendants aware of this grievance in his case management report filed in this litigation.

---

[6] Plaintiff was housed at Lovelock Correctional Center (LCC) on November 24, 2024, which is apparently why he asked for the kite to be forwarded to HDSP. (ECF No. 44 at 32.)

Defendants provide a supplemental declaration from Warden Williams, stating that prior to submitting a grievance, the inmate is in possession of the pink copy of the grievance. The pink copy is turned into the institution with the original white grievance when it is submitted to the institution. According to Warden Williams, being in possession of an unstamped pink copy of a grievance does not indicate that the offender in fact submitted the grievance to the institution. (ECF No. 67-1.)

The court finds there is a dispute of material fact as to whether Plaintiff submitted a grievance concerning the alleged use of excessive force by Jiminez. Plaintiff contends that he initiated the grievance on January 4, 2023, but did not receive a response at any level, and he sent the request form as required under AR 740, and waited the required 60 days, but still did not receive a response, and thus, exhausted administrative remedies. Defendants, on the other hand, maintain that Plaintiff never filed this grievance, and point out inconsistencies between the requirements of AR 740 and the purported grievance, including that it is not stamped or signed by NDOC at any level, and does not appear in his inmate grievance history.

The court did include a requirement in its March 19, 2025, case management order that the parties file a case management report that discuss, among other things, whether the defense of failure to exhaust administrative remedies may apply to any claims. (ECF No. 25 at 2.) Plaintiff's case management report does state that he filed an additional grievance regarding the excessive force, to which he did not receive a response at any level. (ECF No. 27 at 4.)

The court points out, however, that Plaintiff specifically mentioned the first grievance he filed about the events involving his cellmate on December 24, 2022, and the alleged failure to

protect, in his amended complaint, but there is no mention of the grievance related to Jiminez's alleged use of excessive force. (*See* ECF No. 4 at 9.)[7]

Finally, the court observes that Plaintiff filed other grievances during this general time period that do appear in his grievance history, which raises a question as to why he did not receive a response to this particular grievance at any level or why it was not stamped, signed by the grievance coordinator, and entered into the NOTIS system at any level. (*See* ECF No. 45-1 at 17-20.)

All of this demonstrates a material factual dispute regarding whether Plaintiff filed and completed a grievance concerning the alleged use of excessive force by Jiminez. Therefore, Defendants' motion for summary judgment as well as Plaintiff's motion for summary judgment as to the excessive force claim should be denied. The district judge should conduct a preliminary evidentiary hearing to determine the factual issues with respect to exhaustion of the excessive force claim. *See Albino*, 747 F.3d at 1168, 1170-71.

**2. Merits of the Excessive Force Claim**

The court will also consider the arguments concerning the merits of the excessive force claim, because if Jiminez is entitled to summary judgment on the merits of the Eighth Amendment claim, the exhaustion issue would be moot.

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

---

[7] Plaintiff was not required to plead exhaustion. The court simply noticed that he discussed the grievance regarding the failure to protect claim in detail in his pleading, but did not mention a grievance related to the alleged use of excessive force.

*McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The extent of injury may also provide some indication of the amount of force applied." *Id.*

Jiminez argues there is no evidence that any force was used on Plaintiff on December 24, 2022, outside of Plaintiff's own testimony and "largely hearsay" affidavits of other inmates. Jiminez points out that no kite or grievance mentioned the alleged use of force. Nor is there any reference to the alleged use of force or injury resulting from the alleged use of force in any medical kite or record.

Plaintiff claims that while escorting him back to his cell after a strip search, he asked Jiminez to let him see medical regarding his injuries. He alleges that Jiminez asked Plaintiff where he hurt the most, and Plaintiff said his back as well as his legs and arms, and Jiminez proceeded to punch Plaintiff in the back and shove him into the wall, all while handcuffed. This caused Plaintiff to buckle in pain, and when he stood up, Jiminez pushed his head into the wall, causing his lip to split open and two teeth to loosen. (ECF No. 4 at 8.)

Inmate Burnes states in his declaration that he saw Plaintiff being strip searched in the shower, and on the way back to his cell, he saw Jiminez punch Plaintiff from behind while

Plaintiff was handcuffed. (ECF No. 44 at 34.) Another inmate, Lavella Anthony, states in a declaration that he asked Jiminez about the incident and he said an inmate got out of line and he pulled the inmate out of his cell and punched him a few times, and identified the inmate as Plaintiff. (*Id.* at 42.) Inmate Jermaine Johnson similarly states that Jiminez told him that he had to rough Plaintiff up "because his cellmate was high and he (Plaintiff) was talking shit about me (Jiminez) not doing my job." (*Id.* at 43.)

While Jiminez argues these statements are "hearsay," the statements attributed to Jiminez by Anthony and Johnson are party admissions and not hearsay. Fed. R. Evid. 801(d)(2). Inmate Burnes' declaration is based on what he claims he personally observed.

Moreover, allegations made under penalty of perjury in Plaintiff's own pleading are sufficient to create a genuine dispute of material fact as to whether excessive force was used. "[D]eclarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citation omitted). The court may not "disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id.* The court can disregard a declaration that includes only conclusions, and is devoid of facts based on personal knowledge, but that is not the case here. *See id.* (citations omitted). The weight to be assigned to a self-serving declaration "is to be assessed by the trier of fact at trial," but this is not a basis "to disregard the evidence at the summary judgment stage." *Id.* at 499.

There is also a question of fact, discussed *supra*, as to whether Plaintiff raised the issue of the excessive force used by Jiminez and any resulting injuries in a second grievance filed about the events of December 24, 2022.

Defendants are correct that there do not appear to be any medical records or kites attributing injuries to the alleged use of force by Jiminez on December 24, 2022.

In sum, there are genuinely disputed facts concerning whether force was used by Jiminez against Plaintiff on December 24, 2022, and if so, whether Plaintiff suffered any injuries as a result.

For purposes of the argument that Jiminez is entitled to qualified immunity, there are disputed facts concerning whether Jiminez violated Plaintiff's Eighth Amendment rights. In addition, taking the facts in the light favorable to Plaintiff, it was clearly established that the gratuitous use of excessive force violates the Eighth Amendment. *Hudson*, 502 U.S. at 6-7; *Whitley*, 475 U.S. at 320-21. Therefore, Jiminez is not entitled to qualified immunity on the Eighth Amendment excessive force claim at this juncture.

In conclusion, both parties' motions for summary judgment should be denied as to The Eighth Amendment excessive force claim.

**C. Punitive Damages**

Both parties move to summary judgment as to Plaintiff's request for punitive damages.

"[P]unitive damages in an action under § 1983 [may be assessed] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Whether punitive damages should be awarded is ordinarily decided by the trier of fact at trial, and not by a judge on a motion for summary judgment, because whether to award punitive damages requires a factual inquiry into the defendant's motives. *See Harris v. Ely State Prison Staff,* No. 3:21-cv-00380-CLB, 2025 WL 2806549, at *18 (D. Nev. Oct. 2, 2025); *Spears v. Balaam*, No. 3:21-cv-00373-MMD-CSD, 2022 WL 2162799, at *6-7 (D. Nev. Apr. 12, 2022);

*Pullano v. No. 8170, CCDC Guard*, No. 2:10-cv-00335-MMD, 2013 WL 1758999, at * 2 (D. Nev. Apr. 24, 2013). Therefore, both parties' motions should be denied insofar as Plaintiff's request for punitive damages is concerned.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment (ECF No. 44) and **DENYING** Defendants' motion for summary judgment (ECF No. 50).

The District Judge should hold a preliminary evidentiary hearing to determine the facts regarding whether Plaintiff exhausted administrative remedies for his Eighth Amendment excessive force claim. If the District Judge finds the facts demonstrate Plaintiff did not exhaust administrative remedies for the Eighth Amendment excessive force claim, then judgment should be entered in favor of Jiminez for the Eighth Amendment excessive force claim. If the District Judge finds the facts demonstrate Plaintiff did exhaust administrative remedies for the Eighth Amendment excessive force claim (or administrative remedies were unavailable to Plaintiff), then the Eighth Amendment excessive force claim should proceed to trial with the Eighth Amendment failure to protect claim.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 19, 2026

Craig S. Denney
United States Magistrate Judge

# Exhibit B

District Judge's Summary Judgment Order

Exhibit B

Exhibit B

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY STIGER, Plaintiff, v. MUHAMMAD, *et al.*, Defendants. | Case No. 3:23-cv-00653-MMD-CSD<br>ORDER |

## I. SUMMARY

*Pro se* Plaintiff Anthony Stiger, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil rights action under 42 U.S.C. § 1983 to redress constitutional violations he allegedly suffered while housed at High Desert State Prison ("HDSP"). (ECF Nos. 4, 7.) The Court screened Stiger's First Amended Complaint (ECF No. 4 ("FAC")) and allowed him to proceed with failure-to-protect and excessive force claims under the Eighth Amendment. (ECF No. 7 ("Screening Order").) Stiger filed a motion for summary judgment (ECF No. 44 ("Stiger's Motion")).[1] Defendants filed a separate motion for summary judgment (ECF No. 50 ("Defendants' Motion"))[2] (collectively, "the Motions"). Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation (ECF No. 68 ("R&R")), to which Defendants[3], only, now timely object (ECF No. 69 ("Objection"))[4], recommending the Court deny both

---

[1]Defendants filed a response (ECF Nos. 45, 47 (sealed)), and Plaintiff replied (ECF No. 49).

[2]Plaintiff responded (ECF No. 52), and Defendants replied (ECF No. 53). The Court granted Plaintiff leave to file supplemental briefing (ECF Nos. 57, 58). (ECF No. 65.) Defendants filed a response to the supplemental briefing (ECF No. 67).

[3]Defendants include Bradley Bergren, Robert Jiminez, and Yasser Mohamed.

[4]Plaintiff filed a response to Defendants' Objection. (ECF No. 70.)

Stiger's Motion and Defendants' Motion. (ECF No. 68 at 1, 27.)

For the reasons discussed below, the Court will adopt the R&R's recommendation to deny the Motions based on genuine disputes of material fact. As to Defendants' Motion, in particular, the Court agrees that Defendants have not met their burden to demonstrate an absence of genuine disputes of material fact and, for reasons further explained below, the Court adopts the R&R's recommendation to deny summary judgment. As to Stiger's Motion, no objection, to date, has been filed by Stiger. As further explained below, the Court will also adopt the R&R's recommendation to deny Stiger's Motion.

## II. RELEVANT BACKGROUND

As mentioned, the Court previously screened Stiger's FAC (ECF No. 4) and found that it stated colorable failure-to-protect and excessive force claims under the Eighth Amendment.[5] (ECF No. 7.) The following facts are taken from the Court's Screening Order and adapted from the FAC.[6] (*Id.*)

Stiger was housed with cellmate Lonnie Garner at HDSP, whom prison officials allegedly knew had a history of violent psychotic episodes involving self-harm and harm of other inmates. (*Id.* at 3.) Stiger alleges that on December 24, 2022, he informed Defendant Bergren—and later Defendants Mohamed and Jiminez—that Garner was behaving erratically, threatening to harm both himself and Stiger, possessed a prison-made knife, and had injured Stiger. (*Id.* at 3-5.) On this date, Stiger also filed both informal and emergency grievances reporting the incident and citing a lack of timely response from prison officials. (ECF No. 44 at 35-37, 40.) Stiger claims that, despite these warnings, Defendants failed to properly intervene by separating the inmates or to otherwise protect

---

[5]The Court allowed the failure-to-protect claim to proceed against Defendants Yasser Mohamed (mistakenly identified by Plaintiff as "Muhammad"), Robert Jiminez (mistakenly identified by Plaintiff as "Juminez"), and Bradley Bergren (mistakenly identified by Plaintiff as "Burgen"). (ECF No. 7.) The Court allowed the excessive force claim to proceed against Defendant Jiminez. (*Id.*)

[6]The following facts are undisputed unless otherwise noted. The Court further incorporates by reference Judge Denney's description of the background of the case and recitation of pertinent allegations in the FAC, provided in the R&R. (ECF No. 68 at 1-3.)

him, leaving Stiger confined with Garner for approximately three hours while Garner assaulted him and attempted to harm himself.[7] (ECF No. 7 at 4-5.)

Stiger further alleges that, after several hours, correctional officers eventually removed Garner from the cell. (*Id.* at 5.) As Defendant Jiminez escorted Stiger back to his cell in handcuffs, Jiminez allegedly punched Stiger in the back and shoved him into the cell wall.[8] (*Id.*) Stiger claims that Jiminez then forced him upright and pushed his head into the wall, splitting Stiger's lip and loosening two teeth. (*Id.*) Declaration statements from inmates David Burnes, Lavella Anthony, and Jermaine Johnson appears to corroborate Stiger's account. (ECF No. 44 at 34, 42-43.) Stiger alleges that, as a result of these incidents, he sustained nerve damage, chronic pain, mobility impairments requiring the use of a cane, and psychological injuries, including severe anxiety and depression. (ECF No. 7 at 5-6.)

## III. DISCUSSION

Stiger moves for summary judgment on his Eighth Amendment claims, contending that the undisputed evidence establishes that: (1) Defendants Mohamed, Bergren, and Jiminez were deliberately indifferent to a substantial risk to his safety after he reported his cellmate's violent and psychotic behavior; and (2) Defendant Jiminez used excessive force against him while restrained. (ECF No. 44.) Stiger also seeks punitive damages. (*Id.*) To date, no objection has been filed by Stiger. Because there is no objection, and, as further explained below, the Court will adopt the R&R's recommendation to deny Stiger's Motion.

---

[7]Defendants by contrast, offer varying accounts of their response time, asserting that Defendants responded in "less than an hour," "an hour," or "three hours." (ECF No. 50 at 2, 13.)

[8]Defendants dispute the alleged use of force and/or any injury incurred as a result, pointing to Stiger's failure to file a medical kite or grievance regarding the incident as support. (ECF No. 50 at 10; ECF No. 69 at 10.) The Magistrate Judge notes that the FAC references a grievance filed regarding the failure-to-protect claim but not the excessive force claim. (ECF No. 68 at 22-23, 26.) Upon further review of the record, the Court notes that Stiger, indeed, filed an informal grievance on January 4, 2023 stating the following: "I was also pulled out of my cell and punched and my head was slammed against the wall by c/o Juminez." (ECF No. 52-1 at 4-5.)

Defendants, meanwhile, oppose Stiger's Motion and move for summary judgment in their favor on Stiger's claims. Defendants argue that: (1) Stiger lacks admissible evidence establishing deliberate indifference under the Eighth Amendment; (2) Defendants are entitled to qualified immunity; (3) Stiger failed to exhaust his administrative remedies as to the excessive force claim; and (4) punitive damages are improper under the circumstances. (ECF No. 50.) To avoid repetition, the Court will address the Motions as they pertain to each claim while bearing in mind the parties' burdens on summary judgment. *See* Fed. R. Civ. P. 56 (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) ("The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.") (citation omitted).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* The Court's review of Defendants' Motion is thus *de novo* because Defendants filed their Objection (ECF No. 69). The Court first evaluates the Motions with respect to the failure-to-protect claim and Defendants' request for qualified immunity before turning to the excessive force claim and finds that genuine disputes of material fact preclude summary judgment for either party on these claims.

**A. Failure-To-Protect Claim**

The Court first addresses the merits of Stiger's Eighth Amendment failure-to-protect claim against Defendants Mohamed, Bergren, and Jiminez and finds that a genuine factual dispute exists as to whether they acted with deliberate indifference to Stiger's safety. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding that

summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial.").

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). Deprivations constituting an "unnecessary and wanton inflection of pain" or denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted). In essence, prison officials have a duty to guarantee not only adequate food, clothing, shelter, and medical care but to also take "reasonable measures" to ensure inmate safety and "protect prisoners from violence at the hands of other prisoners." *See Farmer v. Brennan*, 511 U.S. 825, 825, 832 (1994); *see also Seiter*, 501 U.S. at 303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment).

When a prison official is accused of imposing unsafe conditions of confinement in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, the inquiry turns on whether the official "acted with deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). A prison official is deliberately indifferent when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."[9] *See Farmer*, 511 U.S. at 834-35 ("[A] prison official may be held liable under the Eighth Amendment for denying humane

---

[9]To prevail on a conditions of confinement claim under the Eighth Amendment, a plaintiff must make both of these showings. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Seiter*, 501 U.S. at 298).

conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

To satisfy the subjective prong, a plaintiff must show actual knowledge—that prison officials knew of and disregarded a risk to inmate health or safety created by the condition. *See Farmer*, 511 U.S. at 826. Here, the primary factual dispute revolves around whether Defendants Bergren, Mohamed, and Jiminez knew that Stiger faced a substantial risk of serious harm from his cellmate yet failed to respond in a timely manner. In their Motion, Defendants dispute the subjective prong, arguing they were not deliberately indifferent because they timely responded to the incident "within an hour of receiving [Stiger's] grievance" by removing Stiger's cellmate and therefore did not violate Stiger's Eighth Amendment rights. (ECF No. 50 at 2, 17-18; ECF No. 45 at 14.) Elsewhere, however, Defendants' narrative of the timeline shifts when they assert that "there was only a three-hour delay in responding to Stiger's request for his cellmate to see medical," which they contend was reasonable given that the incident occurred on Christmas Eve. (ECF No. 45 at 13.)

Stiger, by contrast, presents evidence, including sworn declarations from other inmates along with his own grievance record, that he repeatedly alerted Bergren, Mohamed, and Jiminez that his cellmate was experiencing a violent mental health episode, possessed a weapon, and posed an immediate danger to both himself and Stiger, yet the officers failed to properly intervene. (ECF No. 44 at 33, 35-36, 38-39.) According to Stiger's informal grievance statement, several hours later, at 2:00 p.m., non-defendant officers arrived and took the cellmate to medical. (*Id.* at 36.) The Court thus finds that these competing accounts create a genuine dispute of material fact regarding whether Defendants knew of, yet deliberately disregarded, a substantial risk to Stiger's safety. Accordingly, the Court denies the Motions as to the failure-to-protect claim.[10]

[10]Because the Court finds a genuine dispute of material fact as to the subjective requirement for deliberate indifference, it need not assess the objective requirement.

**B. Excessive Force Claim and Administrative Exhaustion**

The Court next turns to the merits of Stiger's Eighth Amendment excessive force claim against Defendant Jiminez and finds that a genuine factual dispute exists as to the officer conduct in question. In particular, the Court agrees with the Magistrate Judge's finding that a genuine factual dispute exists as to the alleged force used by Jiminez against Stiger, the circumstances under which it was applied, and the injuries incurred as a result. (ECF No. 68 at 23-26).

An Eighth Amendment claim of excessive force against prisoners is evaluated under the *Hudson* Court's five-factor balancing test: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *See Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992)). In evaluating a prison official's particular use of force, the core judicial inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6-7. A showing of serious injury as a result of the force applied is not required, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9.

In applying the *Hudson* factors, the Magistrate Judge identifies genuine disputes of material fact in the record that preclude summary judgment. In both their Motion and Objection, Defendants, on the one hand, primarily contend that Stiger's failure to file a medical kite or grievance regarding the alleged use of force by Jiminez or any resulting injury supports the conclusion that no force was used. (ECF No. 50 at 10; ECF No. 69 at 10.) Stiger, however, points to sworn declarations from other inmates stating that they witnessed Jiminez punch Stiger and heard Jiminez recount admissions acknowledging his use of force against Stiger.[11] (*See* ECF No. 44 at 34, 42-43.) This evidence creates a

---

[11]Inmate David Burnes stated: "I saw Anthony being striped searched in the shower and on the way back to his cell I saw Officer Juminez punch him from behind

genuine dispute regarding whether Jiminez used force against Stiger and, if so, whether that force was applied in a "good faith" versus "malicious" or "sadistic" manner. The Court therefore agrees that a genuine dispute of material fact precludes summary judgment on the excessive force claim.

The parties further dispute whether Stiger properly exhausted his administrative remedies as to the excessive force claim. In their Motion, Defendants argue that Stiger failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), as to this claim. (ECF No. 50 at 7-8.) In particular, Defendants argue that while Stiger filed multiple grievances regarding the incident on December 24, 2022, he did not raise concerns of any alleged excessive force involving Jiminez and therefore failed to put NDOC on notice. (*Id.* at 7 (citing ECF No. 45-1 ("Grievance History"); ECF No. 44 at 35-40).) Viewing the record in the light most favorable to Stiger, the Court disagrees.[12]

The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper exhaustion" means "using all steps the agency holds out"); *see also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative remedies under the PLRA, a plaintiff must adhere to "critical procedural rules"). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To exhaust administrative remedies within the NDOC,

---

while he was in handcuffs and Anthony fell." (ECF No. 44 at 34.) Inmate Lavella Anthony stated: "[Officer Jiminez] explained [to me] how he pulled the inmate [Stiger] out of his cell and got off on him (punched) a few times[.]" (*Id.* at 42.) Inmate Jermaine Johnson stated that, on the date of the incident, Officer Jiminez told him: "'I had to rough [Stiger] up because his cell mate was high and he was talking shit about me not doing my job.'" (*Id.* at 43.)

[12]"If undisputed evidence viewed in the light most favorable to the [nonmoving] prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

inmates must follow the procedures set forth in Administrative Regulation 740, and they must complete three tiered levels of a grievance: informal, first, and second review.

A prison grievance need not contain all the elements or specificity of a future legal claim to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). In his opposition to Defendants' Motion, Stiger counters that he did, in fact, file an informal grievance on January 4, 2023 (ECF No. 52-1 at 4-5) as to the alleged excessive force but received no response, despite following up multiple times, adhering to internal grievance procedures, and completing all levels of review. (ECF No. 52 at 26.) In their Objection, Defendants later acknowledge Stiger's excessive force grievance but challenge its validity, contending that it was "never filed with the institution" because it "lacks a file stamp," "lacks a grievance coordinator signature," "does not appear in NOTIS," and because "Stiger possessed the original white copy." (ECF No. 69 at 7.)

Because the full grievance record is factually disputed, the Magistrate Judge recommends the Court hold a preliminary evidentiary hearing to assess whether Stiger properly exhausted his administrative remedies for his Eighth Amendment excessive force claim. (ECF No. 68 at 22-23 (citing *Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014)).) The Court agrees and will hold an evidentiary hearing before trial to address the administrative exhaustion issue.

**C. Qualified Immunity**

Defendants argue they are entitled to qualified immunity for Stiger's Eighth Amendment failure-to-protect and excessive force claims. (ECF No. 50 at 8-17.) Defendants contend that Stiger cannot establish an Eighth Amendment violation for deliberate indifference to inmate safety because Defendants responded adequately to the incident involving Stiger's cellmate. (*Id.* at 9, 16-17.) They further contend that they were not placed on "clear notice" that their conduct violated the Eighth Amendment. (*Id.*) Stiger

counters that Defendants are not entitled to qualified immunity because they violated clearly established Eighth Amendment law along with his rights. (ECF No. 52 at 22-24.) Stiger further argues that Defendants fail to show an absence of genuine dispute of material fact as to their lack of deliberate indifference. (*Id.* at 23.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

As to the failure-to-protect claim, Defendants have failed to meet their burden on summary judgment. Defendants' argument that Stiger failed to put prison officials on "clear notice" of a constitutional violation is unconvincing. (ECF No. 50 at 16.) Under the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that their actions violated Stiger's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Moreover, it is clearly established that "[d]eliberate indifference occurs when '[an] official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.'" *Solis v. County of L.A.*, 514 F.3d 946, 957 (9th Cir.2008) (emphasis added) (quoting *Farmer,* 511 U.S. 825, 841 (1994)).

Here, Defendants concede that they were aware of Stiger's informal and

emergency grievances, both filed on the day of the incident. (*Id.* at 2-3 (citing ECF No. 44 at 40; ECF No. 44 at 35-37).) Moreover, Defendants' varying and inconsistent accounts of the institution's response—ranging from "less than an hour" to "an hour" to "three hours"—reflect their acknowledgment that prison officials were on notice of the incident, despite disputing the timeliness and adequacy of the response. (ECF No. 50 at 2, 13.) A reasonable jury could therefore conclude that Defendants should have, and could have, understood the substantial risk to Stiger's safety and nevertheless failed to respond in a manner consistent with clearly established Eighth Amendment obligations.

The same is true of the excessive force claim. "Objective reasonableness may inform [this] Eighth Amendment inquiry, providing evidence of good faith or of malice." *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 797 (9th Cir. 2018) (concluding that sheriff's department employees were not entitled to qualified immunity where, during a prison disturbance, they electrically shocked prisoners with stun guns for purpose of causing harm). As mentioned above, genuine disputes of material fact remain regarding whether Jiminez used force against Stiger, and, if so, in what capacity. Viewed in a light most favorable to Stiger, a reasonable jury could find that the alleged conduct likely exceeded the bounds of "objective reasonableness" and violated clearly established Eighth Amendment law. *See Hudson*, 503 U.S. at 7-10 (1992).

Viewing all evidence in the light most favorable to Stiger, the Court concludes that Defendants are not entitled to qualified immunity at the summary judgment stage because genuine disputes of material fact remain regarding whether Defendants violated Stiger's clearly established Eighth Amendment rights.

**D. Punitive Damages**

Lastly, both parties move for summary judgment as to Stiger's request for punitive damages. However, as to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct . . . involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Stiger's allegations could lead a reasonable jury to conclude that

prison officials acted with reckless or callous disregard for his health and safety in violation of the Eighth Amendment—conduct that could support an award of punitive damages. Because such an award generally requires a fact-intensive inquiry, the Court denies both parties' requests for summary judgment, as the question is one ultimately best left to a jury.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that Judge Denney's report and recommendation (ECF No. 68) is adopted in full.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 44) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 50) is denied.

The Court refers this case to Judge Denney to conduct a settlement conference. The Court will schedule the evidentiary hearing on whether Stiger exhausted his administrative remedies for his Eighth Amendment excessive force claim after the settlement conference, assuming settlement is not effectuated. To ensure the hearing is timely scheduled, the parties are directed to file a status report within seven days from the settlement conference. The proposed joint pretrial order is due 30 days from the Court's decision on administrative exhaustion.

DATED THIS 27th Day of July 2026.

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS
SEP 15 2026
FILED ______
DOCKETED ______ ______
DATE INITIAL

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE